IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MARGUERITE WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| THE TOWN OF MINT HILL and ) | |
| MINT HILL FIRE PREVENTION ) | |
| BUREAU, INC. f/k/a ) | |
| MINT HILL VOLUNTEER FIRE ) | |
| DEPARTMENT, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**NOW COMES** Plaintiff, Marguerite Watson (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel complaining of the Defendants, and alleges as follows:

## JURISDICTION & VENUE

This Court has jurisdiction over the claims and causes of action raised in this complaint pursuant to 28 USC §§ 1331 and 1367. Venue is proper in this judicial district because Defendants have substantial business contacts in this district, and because the unlawful acts alleged herein occurred substantially in Mecklenburg County, North Carolina. At all relevant times, Defendant Town of Mint Hill and Defendant Mint Hill Volunteer Fire Department, Inc. were an "employer" within the meaning of Title VII, the ADA, and the FMLA. At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, the ADA, and the FMLA.

## PARTIES

1. Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant Town of Mint Hill (hereinafter referred to as

"Defendant Mint Hill" or "Defendant Town") is a municipal corporation with authority to sue and be sued in its own name and which is duly organized and existing under the laws of the State of North Carolina.

3. Defendant Mint Hill Fire Prevention, Inc. f/k/a Mint Hill Volunteer Fire Department, Inc. (hereinafter referred to as "Defendant VFD") is a North Carolina non-profit corporation.

4. Upon information and belief, to the extent applicable, the Defendant Town and Defendant VFD have adopted a plan of insurance pursuant to N.C. Gen. Stat. § 160A-485 and have waived their immunity from civil liability. Further the defense of sovereign or governmental immunity is not available to said Defendants upon Plaintiff's claims.

5. At all times relevant herein, the Defendant Town and Defendant VFD are, and continue to be "employers" within the meaning of Title VII, the ADA, and the FMLA, and under state law in that they are engaged in commerce and/or an activity or industry affecting commerce, and collectively employ more than fifty employees for each working day during each of twenty (20) or more calendar workweeks in the current and/or preceding calendar year.

6. At all times relevant herein, the Defendant Town and Defendant VFD were "joint employers" or were acting in concert as an "integrated enterprise," inasmuch as they exercised substantial control over the daily responsibilities and tasks assigned to Plaintiff, directed her work activities, set the terms and conditions of her employment, and paid her compensation. Moreover, Lee Bailey (the Deputy Town Manager of the Town)(hereinafter "Bailey"), and Candice Hawkins (the Town's Human Resources Director)(hereinafter "Hawkins") exercised substantial control over the human resources functions of both the Defendant Town and Defendant VFD.

7. Venue is proper in this judicial district because Defendants have substantial business contacts in this district, and because unlawful acts alleged herein occurred substantially in

Mecklenburg County, North Carolina.

## ADMINISTRATIVE PROCEDURES

8. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on October 15, 2019 (EEOC Charge No. 430-2020-173). On September 23, 2020, the EEOC issued a Notice of Right to Sue against Defendants entitling her to commence an action under Title VII of the Civil Rights Act within 90 days of that Notice. Plaintiff timely filed her Complaint against Defendants within 90 days of her receipt of the Notice of Right to sue. A copy of said EEOC Charge and Right to Sue letter is attached hereto as Exhibit A.

9. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 23, 2019 (EEOC Charge No. 430-2020-823). On September 23, 2020, the EEOC issued a Notice of Right to Sue against Defendants entitling her to commence an action under Title VII of the Civil Rights Act and the Americans with Disabilities Act within 90 days of that Notice. Plaintiff timely filed her Complaint against Defendants within 90 days of her receipt of the Notice of Right to sue. A copy of said EEOC Charge and Right to Sue letter is attached hereto as Exhibit B.

10. All conditions precedent to the filing of this action have occurred, been undertaken, or have otherwise been waived.

## FACTS

11. Plaintiff began working for the Defendant Town on or about August 30, 2010, as a Program Support Assistant.

12. Plaintiff began working for the Defendant VFD in 2011, as directed by Defendant Town by and through Brian Welch, the then Town Manager for the Defendant Town.

13. On or about August 27, 2012 Plaintiff became a full-time employee of the Defendant

Town, and continued to also provide services to the Defendant VFD, as required by the Defendant Town.

14. At all relevant times hereto, the Defendant Town provided labor and administrative support services to the Defendant VFD and required Plaintiff to provide employment duties to the Defendant VFD, and as such, at all times in which Plaintiff was working for Defendant VFD she was also working for the Defendant Town.

15. The Defendant Town and the Defendant VFD function as an integrated enterprise sharing common management, supervision, human resources, and compensation for employees, including the Plaintiff. Specifically, the Defendant Town regularly invoiced the Defendant VFD for a portion of Plaintiff's compensation and Defendant VFD paid the Defendant Town's invoices.

16. This shared compensation system continued throughout Plaintiff's employment until her termination.

17. At all times during Plaintiff's employment, the Defendant Town contracted with Defendant VFD for Defendant VFD to provide social services to the Defendant Town in the form of fire services, ambulance services, and medic services.

18. On or about August 28, 2018, Plaintiff filed a sexual harassment complaint with Candice Hawkins, Defendant Town's human resources manager, against Roger Hendrix, who was the Treasurer of Defendant VFD and also a Defendant VFD board member.

19. Plaintiff's sexual harassment complaint was based on inappropriate comments, yelling, and degrading Plaintiff due to her sex.

20. In violation of the Defendant Town's policy, which was applicable to Defendant VFD, the Defendants failed to promptly or thoroughly investigate the complaint, and Plaintiff complained to the Defendant Town that she was being subjected to retaliation.

21. On or about October 16, 2018, Plaintiff met with Hawkins and VFD Chief David Leath about her complaint and was notified that the Defendants would begin an investigation, which was being led by Hawkins and Defendant Town.

22. On or about December 13, 2018, the Defendants notified Plaintiff that they had determined that Mr. Hendrix had violated the Defendants' sexual harassment policy.

23. However, in spite of the determination of sexual harassment, the Defendants failed to take any action to correct, or protect Plaintiff against subsequent harassment, discrimination, or retaliation, and the Defendants condoned the wrongful acts.

24. After filing her sexual harassment complaint, the Defendants began a pattern and practice of retaliating against Plaintiff for having filed her sexual harassment complaint. Such actions include, but are not limited to, Defendant VFD wrongfully and without basis accusing Plaintiff of stealing money in an effort to publicly humiliate, discredit, slander, and ultimately terminate her employment from Defendant VFD and Defendant Town.

25. Plaintiff met with Hawkins on October 25, 2018, complaining that she was being retaliated against for making her sexual harassment complaint.

26. Defendants did not take any action to address Plaintiff's retaliation concerns, and Defendants failed to take any action to correct or protect Plaintiff against subsequent harassment, discrimination, or retaliation, and the Defendants condoned the wrongful acts.

27. On February 18, 2019, Plaintiff emailed Mr. Leath and Hawkins further complaining about Defendants' retaliation.

28. On February 22, 2019, Plaintiff again met with Hawkins regarding her retaliation concerns, and specifically that she feared Defendants would terminate her employment.

29. During the February 22, 2019 meeting with Hawkins, Plaintiff reported that in January

2019, Mr. Leath stated, "sometimes it was fun to fire people," in reference to another employee, but such comments were designed to further retaliate against Plaintiff.

30. Defendants again failed to take any action to protect Plaintiff against subsequent harassment, discrimination or retaliation, and the Defendants condoned the wrongful acts.

31. On or about April 22, 2019, Plaintiff's legal counsel sent a letter to Defendants complaining about retaliation.

32. The Defendants still again failed to take any action to protect Plaintiff against subsequent harassment, discrimination or retaliation, and the Defendants condoned the wrongful acts.

33. As a direct result of the retaliation, Plaintiff suffered emotional distress, anxiety, and depression as diagnosed by her physician, which required Plaintiff to take an intermittent medical leave of absence beginning May 6, 2019.

34. Defendants granted Plaintiff's medical leave pursuant to the FMLA, and, through the FMLA process, Defendant had actual notice that Plaintiff suffered, and continues to suffer a disability as that term is defined by the Americans with Disabilities Act ("ADA").

35. On or about the time Plaintiff applied for and received FMLA leave due to her anxiety and depression caused by Defendants, Plaintiff sought information about her eligibility for early retirement and the cost of retiree medical insurance. Plaintiff also submitted a form for the Defendants to complete so that Plaintiff could buy back service.

36. During this process, Plaintiff discovered that her time working for the Defendant VFD, while she was a full time Defendant Town employee, was not being credited to her term of service under Defendant Town's retirement policy via the Local Governmental Employees' Retirement System ("LGERS") which is administered through The North Carolina Retirement Systems, a division of the Department of State Treasurer.

37. Employees of Defendant VFD become LGERS members when hired into a position that requires at least 1,000 hours of work in a calendar year.

38. Plaintiff was at all times a Defendant Town employee when she was providing service to the Defendant VFD, and there was no accounting for the amount of time she spent working for the Defendant VFD.

39. In response to Plaintiff's retirement inquiry, and still upset over Plaintiff's initial reporting of harassment, the Defendants created a pretextual complaint against the Plaintiff in further retaliation against her by now accusing Plaintiff of fabricating her timesheets, and engaging in a scheme to artificially increase her creditable service for retirement eligibility purposes.

40. Defendants' accusations, which relate to events dating back to 2011, are baseless, without merit, and were intentionally designed to further retaliate against Plaintiff, and to ultimately terminate Plaintiff's employment.

41. Despite the retaliatory nature of Defendants' actions, Plaintiff, by and through legal counsel, responded to Defendants' accusations by providing an explanation of all time Plaintiff worked for Defendant VFD in such a manner that the Defendants could not reasonably deny that Plaintiff had not engaged in any wrongful actions, and that Plaintiff's time spent working for the Defendant VFD should be considered compensable time worked for the purpose of calculating Plaintiff's credible retirement service.

42. Unfortunately, Defendants continued to harass and retaliated against Plaintiff for her prior complaints of harassment and retaliation by and through their baseless claims.

43. On August 2, 2019, and as a direct result of Defendants' continued harassment and retaliation, Plaintiff requested continuous FMLA due to her anxiety, depression, and emotional distress caused by Defendants.

44. On August 2, 2019 Plaintiff provided Defendants a completed medical certification form in support of her continuous FMLA leave request to be out of work until September 4, 2019.

45. Defendants granted Plaintiff's continuous FMLA leave due to emotional distress in the workplace.

46. The heart of Plaintiff's need for leave (to be out of the workplace and for not performing any job duties or interacting with Defendants) was due to the Defendants' own harassment and retaliation which caused her medical condition, anxiety and depression.

47. Defendants had an obligation under the FMLA not to interrupt Plaintiff's FMLA leave, to not contact Plaintiff, and to not require Plaintiff to perform work while on FMLA leave.

48. On August 9, 2019, and despite Defendants' prior FMLA approval, the Defendants requested a medical diagnosis to support Plaintiff's request for continuous FMLA leave.

49. On or about August 14, 2019, and despite not being legally required to do so, Plaintiff provided Defendants an additional requested medical certification form for FMLA leave.

50. Defendants' request for a specific diagnosis is a violation of the FMLA, and was requested in order to further harass and retaliate against Plaintiff and cause Plaintiff emotional harm.

51. On August 13, 2019, and while out on FMLA leave, Defendants, by and through Ms. Hawkins, called Plaintiff at home and stated that she knew Plaintiff was out on leave, but asked if Plaintiff could come into the office and meet with her and Bailey the following week for approximately 1 hour to clarify timesheets as part of the retirement service investigation.

52. Plaintiff had previously provided answers to Defendants' inquiries, and there was no legitimate reason why Defendants required Plaintiff to come into work to answer questions while she was out on FMLA leave.

53. On August 14, 2019, counsel for Plaintiff notified counsel for Defendants that

Defendants' contact and request for Plaintiff to work during a continuous FMLA leave was in violation of FMLA and retaliatory.

54. On August 14, 2019 counsel for Defendants responded that it was appropriate for the Defendant Town to meet with Plaintiff, even though Plaintiff was out on continuous FMLA leave.

55. Plaintiff did not meet with the Defendants.

56. On August 30, 2019 Plaintiff emailed Ms. Hawkins that her medical provider indicated that she would not be able to return to work on her anticipated return to work date, and that she would provide an additional medical certification after the Labor Day holiday weekend to extend her leave.

57. On September 1, 2019, Defendants, by and through Jerry Mullis, Defendant VFD's board chairman, texted Plaintiff asking for help at work.

58. On September 3, 2019, Mr. Mullis called and texted Plaintiff asking Plaintiff for work assistance.

59. On September 3, 2019, Plaintiff responded to Mr. Mullis' text asking not to be contacted any further due to her FMLA continuous leave, and Mr. Mullis responded and apologized for his actions.

60. On September 3, 2019, Plaintiff's continuous FMLA leave was extended until October 1, 2019, and then until November 1, 2019.

61. On October 15, 2019, Plaintiff filed EEOC Charge No.430-2020-173 alleging sexual harassment and retaliation.

62. On October 16, 2019, Plaintiff requested a reasonable accommodation in the form of a protected leave extension beyond November 1, 2019 because her FMLA leave eligibility was scheduled to terminate on November 1, 2019.

63. Defendants have a pattern and practice of providing protected leaves of absence beyond FMLA for male employees.

64. On October 16, 2019, Hawkins responded to Plaintiff's request asking for Plaintiff to provide a medical diagnosis, treatment progress and duration of the requested leave.

65. On October 30, 2019, Plaintiff asked Hawkins if she could provide the requested information by November 4, 2019, because her physician needed additional time to complete the request.

66. Hawkins agreed to Plaintiff's request.

67. On October 31, 2019, counsel for Defendants acknowledged receipt of the Charge and reiterated that Plaintiff must meet with the Defendant Town when she is physically able as part of its creditable service investigation. Such actions were additional harassment and retaliation against Plaintiff for her original sexual harassment complaints and for filing her Charge with the EEOC.

68. On November 5, 2019, Plaintiff's healthcare provider provided Defendants the additional medical information requested as part of the ADA accommodations process. Such medical information included a diagnosis for anxiety and depression – a disability as that term is defined by the ADA.

69. At all relevant times hereto, Plaintiff has been disabled as that term is defined by the ADA, and Defendants regarded Plaintiff as disabled.

70. On or about November 8, 2019, Defendants notified Plaintiff that they were evaluating her requested medical leave pursuant to the ADA.

71. Although, Ms. Hawkins approved Plaintiff's requested leave pursuant to the ADA, during the same communication approving the leave, Ms. Hawkins requested to meet with Plaintiff as part of the Defendants' creditable service investigation. Ms. Hawkins provided Plaintiff three (3) dates

to meet as part of the investigation.

72. Defendants' actions in requesting Plaintiff to meet are a violation of the leave it granted Plaintiff under the ADA, and were designed to harass, intimidate, and retaliate against Plaintiff in violation of Title VII, the ADA, and the FMLA.

73. Counsel for Defendants then emailed Plaintiff's counsel asking for a time for Plaintiff to physically meet regarding the creditable service investigation and provided three (3) dates to meet.

74. On November 11, 2019, Plaintiff's counsel responded noting that: a) Plaintiff is not able, to be physically present in the workplace due to her ADA disability; b) Plaintiff's healthcare provider had indicated that because of her disability the Plaintiff could not participate or respond to questions in person; and, c) Plaintiff is willing to answer any written questions that Defendants provide Plaintiff.

75. Plaintiff also reminded Defendants that she previously answered all of their creditable service investigation questions.

76. Plaintiff's request to remotely participate in the investigation was a reasonable request pursuant to the ADA and consistent with Plaintiff's medical condition.

77. Counsel for Defendants then responded that the Defendants would not accommodate Plaintiff's request and that Plaintiff would be forced to come into the workplace to participate in the investigation.

78. Defendants' repeated demands that Plaintiff come into the workplace is a violation of the leave they granted Plaintiff and the ADA. In fact, Defendants' actions were purposefully designed to further retaliate, harass, and cause emotional distress, and knowing that Plaintiff could not come to the workplace due to her ADA disability, Defendants' actions were designed to fabricate a reason to terminate Plaintiff.

79. Defendants threatened in writing that if Plaintiff was unable to come into work the "Town will be forced to make conclusions about Ms. Watson's documentation without her further input."

80. Defendants' requirement implied that if Plaintiff could not come to work, despite being protected by the ADA and being approved by the Defendants to be out of the workplace, she would suffer adverse employment action.

81. In response, Plaintiff's counsel responded to Defendants' counsel noting that the Defendants' requirement for her to be present in the workplace violates her leave, the FMLA, and the ADA, and noting that Plaintiff would be happy to meet when she is physically able, and that in the alternative, and as a reasonable accommodation request, that Defendants provide Plaintiff the questions in writing.

82. Defendants then approved Plaintiff's leave to continue until November 25, 2019.

83. Plaintiff then requested that Plaintiff's leave be continued until December 23, 2019.

84. On November 23, 2019, Defendants notified Plaintiff that her leave was being denied because the request did not contain sufficient medical basis for the leave request and that Plaintiff must provide such information or meet with the Defendant Town the subsequent Monday.

85. Defendants had specific and actual knowledge of Plaintiff's medical condition but still denied the request.

86. On November 24, 2019, Plaintiff provided Defendants the medical basis for her request to continue leave pursuant to the ADA.

87. On November 24, 2019, Defendants, by and through Hawkins, confirmed receipt of the requested medical information and reiterated that Plaintiff was required to meet with the Defendants while out on leave.

88. Hawkins stated: "You (and your two attorneys) fully understand the reason we have been

attempting to meet with you about your time records since July. You (or they) are simply coming up with new attempted ways to put it off, which is unhelpful."

89. Ms. Hawkins reiterated that Plaintiff must meet physically in person with Defendants on November 25, 2019.

90. Plaintiff was unable to meet with Defendants on November 25, 2019 due to her disability – a fact known to the Defendants – and Plaintiff's employment was ultimately terminated on January 21, 2019.

91. On December 23, 2019, Plaintiff filed EEOC Charge No. 430-2020-823 alleging sexual harassment and retaliation.

92. Defendants knew that Plaintiff was unable to meet with Defendants due to her disability, and despite granting Plaintiff medical leave, insisted on such meeting in order to come up with a pretextual reason to terminate Plaintiff's employment.

93. On the one hand, Defendants agreed that Plaintiff could be out on leave, but on the other, Defendants sought to make Plaintiff's medical condition worse.

94. Plaintiff did not engage in any wrongful actions, including but not limited to falsifying timesheets.

95. Plaintiff offered to continue the investigation several ways in exchange for not coming into the workplace, including answering questions in writing or scheduling a time to meet with the assistance of counsel and/or Plaintiff's family members.

96. Plaintiff also agreed to meet with the Defendants when her medical condition improved, and there was no reason why the investigation had to occur while Plaintiff suffered an ADA disability and while she was on approved leave.

97. Defendants denied Plaintiff's requests, despite them being reasonable and consistent with

the ADA accommodations process.

98. Defendants' termination is baseless, without merit, and pretextual in order to conceal its wrongful termination in violation of the ADA, FMLA, Title VII, and State common law.

99. Plaintiff appealed that termination decision, but the Defendants failed to participate in the appeal process thereby denying Plaintiff's due process rights.

100. The Defendant Town, as a government entity, maintains an appeal process as part of its due process obligations whereby the employee can challenge a termination decision.

101. The Plaintiff timely filed an appeal of the termination decision, but the Defendant Town refused to allow the Plaintiff to appeal unless Plaintiff met, in person, with the Defendant Town.

102. The Plaintiff could not meet in person due to her ADA disability, but offered to meet remotely, and the Defendant Town refused the request.

## FIRST CAUSE OF ACTION
**(For Wrongful Discharge)**

103. Plaintiff incorporates by reference every allegation contained in the above paragraphs as though fully set forth herein.

104. Defendants wrongfully terminated Plaintiff's employment without just cause, because Plaintiff had exercised her rights under applicable State and Federal laws (including but not limited to N.C.G.S. § 143-422.2, Title VII, ADA, FMLA, and the North Carolina common law and public policy) in complaining about harassment, retaliation, and discrimination, and in exercising her rights under such laws, which are protected activities.

105. Plaintiff's actions were followed by adverse employment action in the form of harassment and wrongful termination, and the protected conduct was a substantial or motivating

factor in the adverse action.

106. Plaintiff's discharge was in direct contradiction to Defendants' own policies and procedures and contrary to the established public policy and the laws of the State of North Carolina.

107. At all times relevant hereto, Plaintiff was properly performing her job and acted appropriately.

108. Plaintiff's lawful reporting of violations was a substantial factor in Defendants' decision to terminate Plaintiff's employment.

109. Defendants stated reasons for discharge were false and were a mere pretext for the wrongful termination.

110. As a direct and proximate result of said wrongful discharge and in blatant disregard for Plaintiff's rights and sensibilities as well as the rights and safety of others, Plaintiff has been damaged in the form of lost wages, social security, pension, seniority and fringe benefits, and other benefits due her.

111. Plaintiff is entitled to recover her common law damages in an amount believed to exceed $25,000, including lost wages and other benefits, as well as all statutory remedies available under the law.

## SECOND CAUSE OF ACTION
**(Violation of Title VII)**

112. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

113. Plaintiff is a female afforded the protections of Title VII including without limitation employment without sexual harassment, discrimination and retaliation.

114. Plaintiff made numerous complaints of sexual harassment and discrimination and the

Defendant Town and Defendant VFD failed to timely and fully investigate Plaintiff's complaints.

115. Defendant Town and Defendant VFD failed to take any action to protect Plaintiff against sexual harassment or retaliation despite the fact that the Defendant Town and Defendant VFD found that Plaintiff had suffered sexual harassment.

116. Plaintiff suffered sexual harassment and retaliation in the form of being falsely accused of theft and falsifying timesheets and ultimately termination of her employment in violation of Title VII.

117. Plaintiff is entitled to any and all remedies and damages under Title VII, including monetary damages and injunctive and equitable relief and payment of her attorneys' fees and legal costs.

### THIRD CAUSE OF ACTION
### (Violation of the ADA)

118. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

119. At all times relevant hereto, Plaintiff has been "disabled" as term is defined by the ADA because she suffers anxiety and depression to the extent that it limits a major life activity.

120. At all times relevant hereto, Defendant Town and Defendant VFD regarded Plaintiff as disabled.

121. Plaintiff requested and was approved for an ADA accommodation in the form of being out of work on continuous FMLA leave.

122. During her continuous FMLA leave, as extended by the ADA accommodation request, the Defendants interfered with the leave by forcing Plaintiff to come into the workplace and participate in a mock investigation that was designed to, and did discriminate, harass and retaliate

against Plaintiff.

123. Defendant terminated Plaintiff's employment in violation of the ADA and in retaliation for Plaintiff exercising her rights under the ADA.

124. Plaintiff is entitled to any and all remedies and damages under the ADA, including monetary damages and injunctive and equitable relief and payment of her attorneys' fees and legal costs.

## FOURTH CAUSE OF ACTION
### (Violation of FMLA)

125. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

126. Plaintiff applied, for and received FMLA leave from Defendant Town and Defendant VFD.

127. Plaintiff's FMLA rights were repeatedly violated when Defendants Town and Defendant VFD forced Plaintiff to work during FMLA leave, or in the alternative face adverse employment action.

128. Plaintiff refused to work during her FMLA leave and Defendant retaliated against Plaintiff and terminated Plaintiff's employment in violation of the FMLA.

129. The Town and VFD's violations of the FMLA were willful.

130. Plaintiff is entitled to any and all remedies and damages under the FMLA, including monetary damages and injunctive and equitable relief and payment of her attorneys' fees and legal costs.

## FIFTH CAUSE OF ACTION
### (Violation of Plaintiff's Constitutional Rights under the N.C. Constitution)

131. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the

above paragraphs and incorporates the same herein by reference.

132. Defendants Town and VFD had clear, established rules and policies pertaining to certain employment practices as stated herein, including but not limited to anti-sexual harassment, anti-discrimination, ADA/disability policies, anti-retaliation policies, and FMLA/leave policies.

133. Defendants Town and VFD violated their own policies as set forth herein, causing injury to the Plaintiff.

134. Defendants Town and VFD violated Plaintiff's rights to due process under the law by failing to follow its own procedures and processes relating to her termination and post-termination appeal.

135. Defendants' conduct in wrongfully terminating Plaintiff's employment constitutes a deprivation of Plaintiff's property without due process in violation of the law of the land provisions of Article 1, § 19 of the North Carolina Constitution and in violation of the Fourteenth Amendment to the United States Constitution.

136. As a result of the foregoing constitutional violations, Plaintiff has been damaged and is entitled to monetary damages and injunctive and equitable relief.

### SIXTH CAUSE OF ACTION
### (Claim for Declaratory Judgment)

137. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs and incorporates the same herein by reference.

138. There is a bona fide dispute between the Plaintiff and the Defendants Town and VFD as to whether and how much creditable service towards retirement the Plaintiff should have accrued and received for her time working for said Defendants.

139. Plaintiff seeks a declaratory judgment as to the respective rights and duties of the

parties as to the amount of Plaintiff's creditable retirement service she should have accrued while working for the Town and VFD – specifically that Plaintiff should have been entitled to accrue all time worked for said Defendants as creditable service.

140. There is also a bona fide dispute as to whether Plaintiff was entitled to appeal her termination pursuant to the Town and VFD's policies allowing an employee to appeal termination decisions.

141. Plaintiff seeks a declaratory judgment as to the respective rights and duties of the parties as to the obligations of the Town and VFD to abide by its own policies regarding termination and termination appeals – specifically that the Plaintiff was entitled to have appealed her termination pursuant to the established policies.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the reasons set forth in this Complaint, Plaintiff, prays the Court for the following relief:

1. That the Court render judgment against Defendants on Plaintiff's claims and award Plaintiff damages in an amount in excess of $75,000.00, including for compensatory, punitive, liquidated, and other damages as allowed by law, plus pre- and post-judgment interest at the legal rate until paid and satisfied in full;

2. That this matter to be tried before a jury on all issues so triable;

3. That Defendants be required to pay all costs incurred by Plaintiff in this action, including pre judgment and post judgment interest and reasonable attorneys' fees, as allowable; and

4. For such other and further relief as the Court deems just and reasonable.

This the 22nd day of December, 2020.

                                  **GRAY, LAYTON, KERSH, SOLOMON, FURR & SMITH, P.A.**

/s/ Michael L. Carpenter
MICHAEL L. CARPENTER
NC State Bar No. 35202
CHRISTOPHER M. WHELCHEL
NC State Bar No. 31857
P.O. Box 2636
Gastonia, NC 28053
(704) 865-4400
mcarpenter@gastonlegal.com
cwhelchel@gastonlegal.com

**ATTORNEYS FOR PLAINTIFF**